OPINION *Page 2 
{¶ 1} Defendant-appellant, Mellissa M. McMillen, appeals from her conviction and sentence in the Canton Municipal Court on one count of patient endangering, a misdemeanor in violation of R.C. 2903.341(B). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Betty Jo Shapiro is a profoundly retarded 57-year-old woman who resides at Hartville Meadows, an intermediate care facility that provides services to individuals with diagnoses ranging from mild mental retardation to profound mental retardation. Betty Jo has the level of understanding of a five-year-old. She is primarily non-verbal and is not able to speak in sentences or anything that is understandable.
 {¶ 3} Betty Jo has a history of aggressive, non-complaint, and self-injurious behaviors. These behaviors include lowering herself to the floor, biting, hitting, kicking, and pulling other people's hair.
 {¶ 4} Betty Jo has displayed these aggressive behaviors all her life, and she exhibits them on a daily basis. A behavioral support plan prepared by Jessica Stageman, Betty Jo's qualified mental retardation professional ("QRMP"), reported several months in which Betty Jo pulled other people's hair over 150 times. Sometimes Betty Jo is able to pull hard enough to knock the other person to the ground.
 {¶ 5} According to Jacquella Bolden, who also served as Betty Jo's QRMP, Betty Jo may exhibit these behaviors for a variety of reasons. She may just want attention, or not want to take a bath or go to the dinner table, or she may be in pain.
 {¶ 6} The appellant worked at Hartville Meadows in the unit where Betty Jo lives. On October 25, 2007, at approximately 6:20 a.m. Betty Jo approached Mellissa and *Page 3 
then fell to the ground. Betty Jo was not injured in the fall. This incident was observed by Pamela Pike and Melissa Parkinson, who were also employees of Hartville Meadows. Ms. Pike and Ms. Parkinson both reported that Mellissa pushed Betty Jo, resulting in the fall. Ms. Pike further testified that as appellant pushed Betty Jo to the ground, appellant stated, "[t]his bitch is going to get me." Both Ms. Pike and Ms. Parkinson testified that on the day of the incident appellant was in a bad mood, stating "that she was just so sick of this fucking place. . ."
 {¶ 7} Ms. Pike had been previously suspended from Hartville Meadows for verbally abusing a patient. During her testimony, she initially denied having any other work related suspensions; however, when confronted with her personnel record, Ms. Pike admitted having a prior suspension for permitting two clients to leave a swimming pool activity. Ms. Pike also admitted having had a four-day suspension for leaving a resident who required 24-hour supervision unattended in a van. Additionally, Ms. Pike's work record revealed that she had been written up close to sixty times.
 {¶ 8} Jacquella Bolden testified that Ms. Parkinson has a bad reputation in the community for honesty. Ms. Bolden testified that she overheard Ms. Parkinson in a conversation state that she, Ms. Parkinson, wanted to get appellant fired. Ms. Bolden stated that she has "heard things that have come out of her mouth, so I know that she lies."
 {¶ 9} On November 26, 2007, a complaint for assault, under R.C. 2903.13, a fourth degree felony, was filed against the appellant in the Canton Municipal Court, Case No. 2007 CRA 06041. On December 12, 2007, appellant waived the preliminary hearing, and the case was bound over to the Stark County Grand Jury. *Page 4 
 {¶ 10} On January 28, 2008, the Stark County Grand Jury, in Case No. 2007 CR 2174, indicted appellant on one count of patient endangering, a violation of R.C. 2903.341(B), a first degree misdemeanor, and the case was remanded to the Canton Municipal Court, and filed as Case No. 2008 CRB 00585.
 {¶ 11} A two-day jury trial in this matter was commenced on April 10, 2008. Appellant was found guilty and sentenced by the trial court to 180 days in jail, with all but 32 days suspended, credit for two days served, and the remaining 30 days to be served on electronically monitored house arrest. Appellant was also ordered to serve two years probation. Sentence was stayed pending this appeal.
 {¶ 12} Defense counsel filed a motion for a new trial for jury misconduct on April 25, 2008. An evidentiary hearing on the motion took place on May 25, 2008. By Judgment Entry filed April 11, 2008, the trial court denied appellant's motion for a new trial.
 {¶ 13} Appellant timely appeals, raising the following five assignments of error:
 {¶ 14} "I. THE DEFENDANT WAS DEPRIVED OF HER RIGHT TO DUE PROCESS UNDER THE OHIO AND U.S. CONSTITUTIONS BECAUSE THE INDICTMENT FAILED TO CHARGE A MENS REA ELEMENT OF THE OFFENSE OF PATIENT ENDANGERMENT.
 {¶ 15} "II. THE JURY'S VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 16} "III. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY THAT "RECKLESSNESS" IS AN ELEMENT OF THE OFFENSE OF PATIENT ENDANGERING. *Page 5 
 {¶ 17} "IV. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO DECLARE A MISTRIAL WHEN THE PROSECUTION INTIMATED THAT DEFENDANT'S FAILURE TO TESTIFY AT TRIAL SUPPORTS A FINDING OF GUILTY AND ENGAGED IN OTHER MISCONDUCT DURING CLOSING ARGUMENTS.
 {¶ 18} "V. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO GRANT A NEW TRIAL FOR JUROR MISCONDUCT.
 I. {¶ 19} Appellant argues in her first assignment of error that her indictment violated State v. Colon[1], ["Colon I"] because it did not specify the requisite mens rea element for her patient endangerment charge. Appellant argues that the indictment was defective thereby resulting in structural error. We disagree.
 {¶ 20} Colon I, supra, concerned an indictment for robbery in violation of R.C. 2911.02(A) (2), which provides:
 {¶ 21} "No person, in attempting or committing a theft offense * * * shall do any of the following: * * *
 {¶ 22} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm."
 {¶ 23} The Colon I court held:
 {¶ 24} R.C. 2911.02(A) (2) does not specify a particular degree of culpability for the act of `inflict[ing], attempt[ing] to inflict, or threaten [ing] to inflict physical harm,' nor does the statute plainly indicate that strict liability is the mental standard. As a result, [pursuant to R.C. 2901.21(B),] the state was required to prove, beyond a reasonable doubt, that the defendant recklessly inflicted, attempted to inflict, or threatened to inflict physical harm. Colon, 2008-Ohio-1624, ¶ 14,118 Ohio St.3d 26, 885 N.E.2d 917. *Page 6 
 {¶ 25} In the case at bar, appellant was indicted for patient endangerment in violation of R.C. 2903.341, which provides:
 {¶ 26} "(B) No MR/DD caretaker shall create a substantial risk to the health or safety of a mentally retarded person or a developmentally disabled person. . ."
 {¶ 27} The patient endangerment statute under which appellant was convicted does not specify a requisite degree of culpability.
 {¶ 28} R.C. 2901.21(B) provides:
 {¶ 29} "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 {¶ 30} In State v. Maxwell, 95 Ohio St.3d 254, 2002-Ohio-2121,767 N.E.2d 242, the Ohio Supreme Court stated:
 {¶ 31} "[A] court must be able to answer in the negative the following two questions before applying the element of recklessness pursuant to R.C. 2901.21(B): (1) does the section defining an offense specify any degree of culpability, and (2) does the section plainly indicate a purpose to impose strict criminal liability? * * *" Id. at ¶ 21.
 {¶ 32} The Ohio Supreme Court has construed statutory language similar to the language contained in R.C. 2903.341. The Ohio Supreme Court has held that an indictment for child endangering which does not contain the culpable mental state of *Page 7 
recklessness is insufficient to charge that offense. State v.O'Brien (1987), 30 Ohio St.3d 122, 508 N.E.2d 144.
 {¶ 33} R.C. 2919.22, endangering children provides, in relevant part:
 {¶ 34} "(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to thehealth or safety of the child, by violating a duty of care, protection, or support. . . ."[Emphasis added].
 {¶ 35} Like the child endangerment section reviewed inO'Brien, supra, patient endangerment does not specify a particular degree of culpability for the act of creating a substantial risk to the health or safety of a mentally retarded person or a developmentally disabled person, nor does the statute or case law plainly indicate that strict liability is the mental standard. Therefore, R.C. 2901.21(B) imports the default mental element of recklessness. Colon I,2008-Ohio-1624, ¶¶ 11-15, 118 Ohio St.3d 26, 885 N.E.2d 917.
 {¶ 36} Citing State v. Colon, supra, appellant argues that because the indictment fails to expressly charge that recklessness is the mensrea element of the crime of patient endangerment under R.C. 2903.341, the indictment is fatally defective. We disagree.
 {¶ 37} As this Court noted in State v. Vance, Ashland App. No. 2007-COA-035, 2008-Ohio-4763, the Supreme Court reconsidered ColonI in State v. Colon ("Colon II"), 119 Ohio St.3d 204, 893 N.E.2d 169,2008-Ohio-3749. In Colon II, the Court held: *Page 8 
 {¶ 38} "Applying structural-error analysis to a defective indictment is appropriate only in rare cases, such as Colon I, in which multiple errors at the trial follow the defective indictment. In Colon I, the error in the indictment led to errors that `permeate[d] the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence.' Id. at ¶ 23, 885 N.E.2d 917, citing State v. Perry,101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 17. Seldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim. R. 52(B) plain-error analysis." Id. at ¶ 8, 802 N.E.2d 643. The Court noted the multiple errors that occurred in Colon I:
 {¶ 39} "As we stated in Colon I, the defect in the defendant's indictment was not the only error that had occurred: the defective indictment resulted in several other violations of the defendant's rights. 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 29. InColon I, we concluded that there was no evidence to show that the defendant had notice that recklessness was an element of the crime of robbery, nor was there evidence that the state argued that the defendant's conduct was reckless. Id. at ¶ 30, 885 N.E.2d 917. Further, the trial court did not include recklessness as an element of the crime when it instructed the jury. Id. at ¶ 31, 885 N.E.2d 917. In closing argument, the prosecuting attorney treated robbery as a strict-liability offense. Id. Colon II at ¶ 6." See also, Vance, supra at ¶ 51-53.
 {¶ 40} Unlike Colon I, the four prongs necessary to establish structural error are not met in this case. First, the appellant had notice that recklessness was an element of *Page 9 
the crime of patient endangerment. In his closing argument to the jury, appellant's trial counsel argued:
 {¶ 41} "But they've got to prove and they left one thing out in their closing, they gotta prove recklessly created a substantial risk of harm. Is that reckless?"(2T. at 290). Second, apparently in response to this argument, the trial court defined "recklessness" for the jury. (2T. at 304-305)[2].
 {¶ 42} Accordingly, this is not a case where the omission in the indictment permeated the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence. Id. at ¶ 27. In the case at bar, appellant did not object to the indictment or to the court's instructions to the jury, and therefore, failed to preserve his claim that the indictment against him was constitutionally defective. See, State v. Ellis, Guernsey App. No. 2007-CA-46, 2008-Ohio-7002
at ¶ 26. As structural error is not present in this case, this Court may analyze the error in this case pursuant to the Crim. R. 52(B) plain-error analysis. Colon II, supra at ¶ 7.
 {¶ 43} Crim. R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. In order to find plain error under Crim. R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the *Page 10 
syllabus. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v. Barnes (2002),94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 44} In the case at bar, it was appellant who argued that she could not be found guilty of patient endangerment unless she had acted recklessly. The State did not argue that this was a strict liability offense; rather, the thrust of the state's case is that appellant forcibly and intentionally pushed the victim to the ground. These facts certainly support the inference that appellant purposely or knowingly created a substantial risk of harm. R.C. 2901.22(A; B). Either of these culpable mental states is sufficient to establish the default mensrea of recklessness, the element missing from the indictment against appellant. R.C. 2901.22(E). Cf. State v. Easter, Montgomery App. No. 22487, 2008-Ohio-6038 at ¶ 25.
 {¶ 45} Under the circumstances of the case at bar, there is nothing in the record to show that the appellant was prejudiced. Where the defendant had notice through the arguments of counsel that recklessness was the mens rea for the crime charged, the state did not treat patient endangerment as a strict-liability offense, the trial court correctly informed the jury as to the definition of "recklessness" and the defendant did not object, the defendant fails to establish that, "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. *Page 11 
 {¶ 46} We find any error in the indictment was harmless beyond a reasonable doubt.
 {¶ 47} Appellant's first assignment of error is denied.
 II. {¶ 48} Appellant, in his second assignment of error, contends that her conviction for patient endangerment was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 49} "In order to preserve the right to appeal the sufficiency of evidence upon which a conviction is based, a defendant must timely file a Crim. R. 29 motion for acquittal with the trial court." State v.Perry (Aug. 29, 1997), Trumbull App. No. 94-T-5165, unreported,1997 WL 590789, at 10, citing State v. Roe (1989), 41 Ohio St.3d 18, 25,535 N.E.2d 1351. Therefore, "[i]f a Crim. R. 29 motion is not made by a defendant, he or she waives any sufficiency of evidence argument on appeal." Id.; see also State v. Roe (1989), supra.(holding that when "appellant failed to timely file a Crim. R. 29 motion for acquittal, . . . and thus failed to preserve his arguments on appeal . . .").
 {¶ 50} In the case sub judice, appellant failed to make a motion for acquittal. Therefore, appellant did not preserve her right to appeal based upon insufficient evidence.
 {¶ 51} However, even if we were to consider appellant's sufficiency argument, we would find that the same lacks merit.
 {¶ 52} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See State v. *Page 12 Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (stating that "sufficiency is the test of adequacy"); State v. Jenks (1991),61 Ohio St.3d 259 at 273, 574 N.E.2d 492 at 503. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781; Jenks, 61 Ohio St.3d at 273, 574 N.E.2d at 503.
 {¶ 53} Weight of the evidence addresses the evidence's effect of inducing belief. State v. Wilson, 713 Ohio St.3d 382, 387-88,2007-Ohio-2202 at ¶ 25-26; 865 N.E.2d 1264, 1269-1270. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? Even though there may be sufficient evidence to support a conviction, a reviewing court can still re-weigh the evidence and reverse a lower court's holdings." State v. Wilson, supra. However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St.3d at 387. (Quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, supra.
 {¶ 54} Employing the above standard, we believe that the state presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that appellant committed the offense of patient endangerment. *Page 13 
 {¶ 55} In the present case, appellant was charged with and convicted of one count of patient endangering, a violation of R.C. 2903.341(B), a first degree misdemeanor.
 {¶ 56} R.C. 2903.341(B) provides in relevant part:
 {¶ 57} "No MR/DD caretaker shall create a substantial risk to the health or safety of a mentally retarded person or a developmentally disabled person."
 {¶ 58} Where a defendant is charged with a violation of R .C. 2903.341(B), the prosecution must prove the defendant: (1) is an MR/DD caretaker; (2) recklessly created a substantial risk; and (3) to the health or safety of a mentally retarded person or a developmentally disabled person.
 {¶ 59} The parties agree that appellant was an MR/DD caretaker as defined in R.C. 2903.341(A)(1), and that Betty Jo Shapiro is a mentally retarded person or a developmentally disabled person as defined in R.C. 2903.341(A)(2) and R.C. 5123.01. Thus, the evidence offers a substantial basis upon which the jury could reasonably conclude that those elements of R.C. 2903.341(B) were satisfied beyond a reasonable doubt.
 {¶ 60} Although not stated in R.C. 2903.341(B), recklessness is the culpable mental state for the crime of child endangering[3]. Recklessness is defined in R.C. 2901.22(C), which states:
 {¶ 61} "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to *Page 14 
circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 62} To satisfy the second element of a violation of R.C. 2903.341(B), recklessness must create a "substantial risk" to the health and safety of the mentally retarded or developmentally disabled person. A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result or circumstance may occur." R.C. 2901.01(H). See, also, State v. Kamel (1984),12 Ohio St.3d 306, 308, 466 N.E.2d 860, 863; at 308; State v. Newman (Aug. 18, 1995), Ross App. No. 94 CA 2079; State v. Stewart, 5th
Dist. No. 2007-CA-00068, 2007-Ohio-6177 at ¶ 63.
 {¶ 63} In the case at bar, the jury could have found the second element of R.C. 2903.341 (B) satisfied. In the case at bar, Pamela Pike and Melissa Parkinson each testified that they observed the appellant pushed Betty Jo, resulting in her fall to the floor. Given the evidence adduced at trial, the jury could have reasonably determined that appellant's act of pushing Betty Jo to the floor "recklessly" created a "substantial risk" to the health and safety of Betty Jo.
 {¶ 64} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of patient endangerment.
 {¶ 65} We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support appellant's conviction. *Page 15 
 {¶ 66} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758.
 {¶ 67} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 68} Although appellant cross-examined the witnesses and argued that she employed a blocking technique as she had been instructed by her employer, and further, that the state's eyewitnesses were not credible, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 69} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not *Page 16 
believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67,197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 70} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the conviction. The jury did not create a manifest injustice by concluding that appellant was guilty of the crime charged in the indictment. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.
 {¶ 71} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 72} Appellant's second assignment of error is denied.
 III. {¶ 73} In her third assignment of error, appellant asserts that the trial court committed plain, prejudicial error when it failed to properly instruct the jury that "recklessness" is an essential element of the offense of patient endangerment. We disagree.
 {¶ 74} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Martens (1993), 90 Ohio App.3d 338. In order to find an abuse of that discretion, we *Page 17 
must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. Jury instructions must be reviewed as a whole. State v. Coleman (1988), 37 Ohio St.3d 286.
 {¶ 75} Crim. R. 30(A) governs instructions and states as follows:
 {¶ 76} "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.
 {¶ 77} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
 {¶ 78} In Neder v. United States (1999), 527 U.S. 1, 119 S.Ct. 1827, the United State Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824,17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for *Page 18 
determining guilt or innocence. Accordingly, an erroneous jury instruction that omits an element of the offense is subject to harmless-error analysis. Id. at 15, 119 S.Ct. at 1837.
 {¶ 79} Appellant did not file a written request for specific jury instruction on recklessness as an element of the crime of patient endangerment, and did not object to the trial court's jury instructions. Based upon appellant's failure to proffer instructions or object to the instructions and bring the issue to the trial court's attention for consideration, we must address this assignment under the plain error doctrine.
 {¶ 80} In criminal cases, plain error is governed by Crim. R. 52(B), which states:
 {¶ 81} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error "does not constitute a plain error . . . unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.
 {¶ 82} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004),101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'"State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quotingState v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646. *Page 19 
 {¶ 83} The Supreme Court has repeatedly admonished that this exception to the general rule is to be invoked reluctantly. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus. See, also, State v.Thompson (1987), 33 Ohio St.3d 1, 10, 528 N.E.2d 542; State v.Williford (1990), 49 Ohio St.3d 247, 253, 551 N.E.2d 1279 (Resnick, J., dissenting).
 {¶ 84} As noted in our disposition of appellant's first assignment of error, under the circumstances of the case at bar, there is nothing in the record to show that the appellant was prejudiced. Where the defendant had notice through the arguments of counsel that recklessness was the mens rea for the crime charged, the state did not treat patient endangerment as a strict-liability offense, the trial court correctly informed the jury as to the definition of "recklessness" and the defendant did not object, the defendant fails to establish that, "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.
 {¶ 85} We find any error in the instructions to the jury was harmless beyond a reasonable doubt.
 {¶ 86} Appellant's third assignment of error is denied.
 IV. {¶ 87} In her fourth assignment of error, appellant contends that prosecutorial misconduct resulted in reversible error. Specifically, appellant argues that the court erred in not sua sponte declaring a mistrial for certain statements made by the prosecutors during closing arguments. We disagree. *Page 20 
 {¶ 88} A trial court may grant a mistrial sua sponte when there is manifest necessity for the mistrial or when "the ends of public justice would otherwise be defeated." Cleveland v. Walters (1994),98 Ohio App.3d 165, 168, 648 N.E.2d 37. If no motion for a mistrial is requested at trial, the failure to grant a mistrial sua sponte is judged under a plain error standard. State v. Jones (1996), 115 Ohio App.3d 204, 207,684 N.E.2d 1304. The Ohio Supreme Court has overruled a prosecutorial misconduct argument because the evidence of the defendant's guilt was overwhelming. See State v. Hand, 107 Ohio St.3d 378, 398, 2006-Ohio-18,840 N.E.2d 151, citing State v. Rahman (1986), 23 Ohio St.3d 146,154-155, 492 N.E.2d 401. Accordingly, based upon appellant's failure to object to the statements and bring the issue to the trial court's attention for consideration, we must address this assignment under the plain error doctrine. Under this standard, the error is deemed waived unless the outcome of the trial would have been different, but for the error. State v. Wickline (1990), 50 Ohio St.3d 114, 119-120,52 N.E.2d 913; State v. Howard, Montgomery App. No. 18884, 2002-Ohio-2928.
 {¶ 89} In criminal cases, plain error is governed by Crim. R. 52(B), which states:
 {¶ 90} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error "does not constitute a plain error . . . unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. The defendant bears the burden of demonstrating that a plain error affected his substantial rights.United States v. Olano (1993), *Page 21 
507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004), 101 Ohio St.3d 118, 120802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v.Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 91} The Supreme Court has repeatedly admonished that this exception to the general rule is to be invoked reluctantly. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus. See, also, State v.Thompson (1987), 33 Ohio St.3d 1, 10, 528 N.E.2d 542; State v.Williford (1990), 49 Ohio St.3d 247, 253, 551 N.E.2d 1279 (Resnick, J., dissenting).
 {¶ 92} Appellant argues that in closing argument the prosecution made improper comments about the fact she did not testify during her trial, and further made statements to appeal to the passions of the jury, by indicating that the State's witnesses were the only people courageous enough to take the stand. Appellant further argues that the prosecution continued to make improper statements appealing to the jury's passions by suggesting that defense counsel should not have attacked the credibility of the State's witnesses; was preventing the jury from seeing pictures of the victim; and that defense counsel did not care about the victim Betty Jo. Finally, the prosecution invited the jury to make impermissible inferences, in that the jury should find in favor of the State because the administration at Hartville Meadows and local law enforcement believed the State's witnesses. *Page 22 
 {¶ 93} Under the Fifth Amendment to the United States Constitution, applicable to Ohio by reason of the Fourteenth Amendment, the prosecution is forbidden from commenting on the silence of the accused, see Griffin v. California (1965), 38 U.S. 609.
 {¶ 94} The first statement appellant points us to in the prosecutor's closing argument is "* * * You've heard testimony from the only two people that were there that had the courage to sit up on this stand. * * *" The prosecutor continued, "* * * How may witnesses did [defense counsel] call? Five? Not one person was there. The only two people that were there were Pam Pike and Melissa Parkinson and you have no reason to disbelieve either of them. * * *" Finally, the prosecutor argued ""* * * Pam Pike and Melissa Parkinson did the right thing today and yesterday. They came in, they told the truth. They told their story to you, and what have they got in return? A nonstop attack from Attorney Ragner. That's what they've got. Melissa Parkinson's been called a liar, been called a horrible person, a bad nurse. That's what these people get for doing the right thing, for having the courage to stand up and testify. * * *"
 {¶ 95} We first determine whether the prosecutor's remarks constitute a comment on appellant's failure to testify. In doing so, the prosecutor's remarks must be judged by the following standard:
 {¶ 96} "`* * * whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" Statev. Cooper[4] (1977), 52 Ohio St.2d 163, 173, 382, 370 N.E.2d 725, 733, quoting Knowles v. United States (C.A.10, 1955), 224 F.2d 168, 170. Accord State v. Ferguson (1983), 5 Ohio St.3d 160, 162-163, 5 OBR 380, *Page 23 
382-383, 450 N.E.2d 265, 267; State v. Tolliver (1986),33 Ohio App.3d 110, 111, 514 N.E.2d 922,924..
 {¶ 97} The state may comment upon a defendant's failure to offer evidence in support of its case. State v. Collins (2000),89 Ohio St.3d 524, 733 N.E.2d 1118. "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." Id. at 528-29, 733 N.E.2d 1118. The state must refrain from commenting on a decision not to testify, but the state may challenge the weight of evidence offered by the defense in support of its theory of the case. Id. The state does not have a duty to disprove every possible circumstance suggested by the defendant. Id.
 {¶ 98} "[T]he fact that one of the parties fails to call a witness who has some knowledge of the matter under investigation may be commented upon." State v. Petro (1948), 148 Ohio St. 473, 498, 162, 76 N.E.2d 355,367; State v. Champion (1924), 109 Ohio St. 281, 289-290, 142 N.E. 141,143-144. State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193,1993-Ohio-170, 616 N.E.2d 909,916.
 {¶ 99} In State v. Clemons, the Ohio Supreme Court stated; "[t]he comment that the defense did not call an expert to testify that defendant "blacked out" during proceedings is not error. The comment that a witness other than the accused did not testify is not improper,State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916, since the prosecution may comment upon the failure of the defense to offer evidence in support of its case. State v. Williams (1986),23 Ohio St.3d 16, 19-20, 23 OBR 13, 16-17, 490 N.E.2d 906, 910-911; State v.Bies (1996), 74 Ohio St.3d 320, *Page 24 
326, 658 N.E.2d 754, 760." Clemons, supra, 82 Ohio St.3d 438, 452,1998-Ohio-452, 692 N.E.2d 1009, 1022.
 {¶ 100} In the case at bar, the trial court instructed the jury that it must decide the case on the evidence and that opening statements and closing arguments are not evidence. We presume that the jury followed the court's instructions. State v. Loza (1994), 71 Ohio St.3d 61, 79,641 N.E.2d 1082.
 {¶ 101} We find that the language used by the prosecutor in this case is not such that the jury would "naturally and necessarily" take it as comment on the failure of the accused to testify, or to present a defense and thus fails the test set forth in State v. Cooper (1977),52 Ohio St.2d 163, 370 N.E.2d 725, vacated on other grounds (1978),438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1157. State v. Williams (1986),23 Ohio St.3d 16, 20, 490 N.E.2d 906, 911.
 {¶ 102} The appellant next argues that the prosecutors improperly denigrated defense counsel by arguing that he should not have attacked the credibility of the State's witnesses, was preventing the jury from seeing pictures of the victim, and that defense counsel did not care about Betty Jo:" * * * Attorney Ragner talks about photographs, photographs of scratches. Why didn't I bring a photograph of scratches? He won't let you see photograph of the victim, though. * * *" (2T. at 294). And later: "* * * When it comes down to it, [the Defendant] pushed a mentally retarded woman with a brain tumor to the ground. I guess that's not a big deal to John [Ragner]. I guess he doesn't care about that. * * *" (Id.).
 {¶ 103} Next the appellant argues that the prosecution invited the jury to make impermissible inferences, in that the jury should find in favor of the State because the *Page 25 
administration at Hartville Meadows and local law enforcement believed the State's witnesses:
 {¶ 104} "* * * Who got fired out of this? Pam Pike's still employed with Hartville Meadows. Melissa Parkinson Still works for Hartville Meadows. Who got fired? She got fired. The defendant got fired. The only one who got fired. That tells you a little bit about who Hartville Meadows believes in this instance. She was also charged criminally. That tells you about who the sheriff and who the Hartville Police officer believed in this case. * * *" (2T. at 293).
 {¶ 105} In State v. Draughn (1992), 76 Ohio App. 3d 666,602 N.E. 2d 790, this Court stated: "[i]n opening closing argument the prosecutor is limited to comments upon the evidence, and the logical and appropriate conclusions to be drawn therefrom. Thus, he can bolster his own witnesses, and conclude by saying, in effect, `The evidence supports the conclusion that these witnesses are telling the truth.' He cannot say, `I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor. See State v. Smith (1984),14 Ohio St. 3d 13, 14 OBR 317, 470 N.E. 2d 883. In a sense, such argument by the prosecutor injects himself into the trial as a thirteenth juror, and claims to himself the first vote in the jury room. Further, it is inappropriate for the prosecutor to vouch for the integrity of his witnesses. Id.
 {¶ 106} "As to the defense witnesses, including the defendant, the prosecutor may comment upon the testimony, and suggest the conclusions to be drawn therefrom. He can say, `The evidence supports the conclusion that the defendant is lying, is not telling the truth, is scheming, has ulterior motives, including his own hide, for not telling *Page 26 
the truth.' See State v. Strobel (1988), 51 Ohio App.3d 31,554 N.E.2d 916. He may not say, `I believe the defendant is lying,' for the same reasons as above.
 {¶ 107} "In his rebuttal argument, the prosecutor may argue that the evidence does not support the conclusion postulated by defense counsel. He may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. He may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight.
 {¶ 108} "Generally the credibility of various witnesses will now have been put in issue by the argument of the defense. Considerable additional latitude is due the prosecutor at this juncture, either on fair play grounds or because the comments are invited by the defense. The prosecutor should be allowed to go as far as defense counsel. Thus, if the defense accuses witnesses of lying, the prosecutor should have the same right.
 {¶ 109} "However, the prosecutor may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case. Thus, he cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case.United States v. Solivan (C.A.6, 1991), 937 F.2d 1146". Id. at 670-71,602 N.E.2d at 793.
 {¶ 110} Some of the prosecutor's comments exceeded the scope of proper argument. The comments cited unfairly suggested that the defense's case was *Page 27 
untruthful and not honestly presented. Further they inappropriately suggest that the jury should find appellant guilty because law enforcement, as well as the administration of Hartville Meadows, do not believe her. In the context in which they were stated, the prosecution's comments imputed insincerity to defense counsel, and attempted to bolster the credibility of their own witnesses. Said comments were therefore improper. State v. Keenan (1993), 66 Ohio St.3d 402, 405-406,613 N.E.2d 203.; State v. Clemons, 82 Ohio St.3d at 452,696 N.E.2d 1009; State v. LaMar (2002), 95 Ohio St.3d 166, 767 N.E.2d 166,2002-Ohio-2128 at ¶ 167.
 {¶ 111} The fact that the prosecutor engaged in some improper argument, however, does not warrant reversal unless the remarks prejudicially affected substantial rights of the accused. State v.Hessler (2000), 90 Ohio St.3d 108, 125, 734 N.E.2d 1237. In making this determination, we must consider the effect of any misconduct in the context of the entire trial. Keenan, 66 Ohio St.3d at 410,613 N.E.2d 203. We must also view the prosecutor's closing argument in its entirety when determining prejudice. State v. Hill (1996), 75 Ohio St.3d 195,204, 661 N.E.2d 1068.
 {¶ 112} In the case at bar, even though some of the prosecutor's argument was improper, such comments did not pervade the entire trial, let alone the closing argument. Under these circumstances, there is nothing in the record to show that the jury would have found the appellant not guilty had the comments not been made on the part of the prosecution. State v. Benge, 75 Ohio St.3d 136, 141, 1996-Ohio-227.
 {¶ 113} In the circumstances of the case, no prejudice amounting to a denial of constitutional due process was shown.
 {¶ 114} Appellant's fourth assignment of error is denied. *Page 28 
 V. {¶ 115} In her fifth assignment of error, appellant alleges the trial court abused its discretion by failing to grant a new trial for juror misconduct.
 {¶ 116} Appellant moved for a mistrial and a new trial based on Crim. R. 33, which provides in pertinent part:
 {¶ 117} "(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 118} "(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 {¶ 119} "(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state; . . .
 {¶ 120} "(E) Invalid grounds for new trial. No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:
 {¶ 121} "(5) Any other cause, unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial".
 {¶ 122} The jury is obligated to decide a case solely on the evidence, and any communication or contact outside the courtroom or jury room about the matter at trial between a juror and another person, and any independent inquiry or experiment by a juror concerning the evidence or the law, constitutes juror misconduct. State v. Taylor (1991),73 Ohio App.3d 827, 831, 598 N.E.2d 818. Further, when a juror refuses to consider the evidence or forms an opinion as to guilt or innocence before all the *Page 29 
evidence is presented, such activity constitutes misconduct. Id. However, the United States Supreme Court has recognized:
 {¶ 123} "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. . . . [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Smith v.Phillips (1982), 455 U.S. 209, 217 102 S.Ct. 940, 946; United States v.Olano (1993), 507 U.S. 725, 738, 113 S.Ct. 1770, 1780.
 {¶ 124} In State v. Hessler (2000), 90 Ohio St.3d 108, 115-116,734 N.E.2d 1237, 1247 the Ohio Supreme Court set forth our standard of review when juror misconduct is alleged:
 {¶ 125} "As a reviewing court, we show deference to the trial judge, who sees and hears the events and thus is in a better position to accurately evaluate the situation and determine the appropriate scope of inquiry. State v. Huertas (1990), 51 Ohio St.3d 22, 29, 553 N.E.2d 1058,1067; United States v. Ramos (C.A.5, 1995), 71 F.3d 1150, 1153-1154. Therefore, we employ an abuse-of-discretion standard and will not reverse the trial court unless it has handled the alleged juror misconduct or ruled upon the post-trial motion in an `unreasonable, arbitrary, or unconscionable manner'. State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149." State v. Hessler (2000),90 Ohio St.3d 108, 115-116, 734 N.E.2d 1237, 1247. We now consider the relevant facts. *Page 30 
 {¶ 126} In the case at bar, the trial court held an evidentiary hearing upon appellant's motion. The motion alleged three instances of misconduct: that the juror attempted to speak with Canton City Prosecutor Frank Forchione; that the juror attempted to speak with members of the prosecution team; and that the juror tried to elicit information about the case and the appellant from the appellant's father during a recess in the trial.
 {¶ 127} Shawn Burns, who works for the Stark County Public Defender Office, observed part of the trial. While observing, Mr. Burns saw one of the jurors approach Canton City Prosecutor Frank Forchione during a trial break. The juror moved past Mr. Forchione and said some thing to the effect of, "Wow, you're here. This must be a big case." The juror revealed in voir dire that he has known Mr. Forchione for years. He further stated his acquaintance with Mr. Forchione would not interfere with his ability to be a fair and impartial juror. The defense did not challenge him as a juror.
 {¶ 128} At another trial break, Mr. Burns observed the juror approach members of the prosecution and ask questions about how many witnesses there are and who is doing the closing arguments.
 {¶ 129} The juror testified at hearing. The juror admitted speaking with Mr. Forchione and approaching the prosecution team. The juror indicated that he asked about when the trial would be over because he wanted to get to a bowling tournament in Cincinnati, Ohio, following the second day of trial. He did cancel those plans the following morning before the jury began deliberations.
 {¶ 130} The appellant's father, John McMillen, testified that the same juror had approached him outside of the courtroom. At the time, Mr. McMillen did not know this *Page 31 
man was a juror. Mr. McMillen testified that the juror asked him about his job as an automobile mechanic. After some small talk, the juror allegedly told Mr. McMillen, "I already got this case figured out." The juror also asked Mr. McMillen whether Mellissa would be able to go back to work if she won her case. Mr. McMillen responded that she would. It was only after Mr. McMillen went into the courtroom that he realized the man he had just spoken to was a juror. It wasn't until after the trial that Mr. McMillen notified appellant's attorney of what had taken place.
 {¶ 131} The trial court subpoenaed the juror to testify at the hearing on appellant's motion for a new trial. The juror testified that he was sitting in the lobby on a break and that Mr. McMillen came over, sat by him and began talking to him. The juror recalled that Mr. McMillen approached him in the afternoon. He testified Mr. McMillen discussed his work as a transmission mechanic with him and then began talking about his daughter. Mr. McMillen said she would never hurt anyone. The juror told Mr. McMillen that she looks like a nice girl. The juror testified that he was unaware that Mr. McMillen was the appellant's father. He denied making any comment to Mr. McMillen that he had the case figured out and stated he did not discuss this conversation with any of the other jurors. The juror did not inform the Court about this conversation.
 {¶ 132} Appellant believes he was denied the right to a fair and impartial jury because of juror misconduct. We do not agree.
 {¶ 133} We find that substantial evidence exists in the record to support a determination that the juror committed no juror misconduct. Under the circumstances, we must defer to the trier of fact who had the opportunity to hear the witnesses and observe their demeanor. SeeState v. Eskridge (1988), 38 Ohio St.3d 56, *Page 32 526 N.E.2d 304; State v. Brown (1988), 38 Ohio St.3d 305, 528 N.E.2d 523; State v.Thomas (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. We are not inclined to substitute our judgment for the trial court's judgment concerning the credibility of the juror and the other witnesses who testified at the hearing. State v. Taylor, supra 73 Ohio App.3d at 833,598 N.E.2d at 822. Looking at the above incidents, we cannot find the trial court abused its discretion. As required, the court conducted an evidentiary hearing to inquire into whether there had been any misconduct on the part of the jurors. The court determined that the incident had no effect upon the jury's verdict. Upon review, the court's actions clearly satisfied its duty to inquire and its decision was not unreasonable, arbitrary, or unconscionable.
 {¶ 135} Having found no error prejudicial to the appellant, appellant's fifth assignment of error is denied.
 {¶ 136} For the foregoing reasons, the judgment of the Canton Municipal Court is affirmed.
 Gwin, J., Farmer, P.J., and Wise, J., concur. *Page 33 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Canton Municipal Court is affirmed. Costs to appellant.
[1] 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917.
[2] However, we note that although recklessness was defined, the record shows that the trial court did not give an instruction indicating that recklessness was the requisite degree of culpability for a patient endangerment conviction.
[3] See, Assignment of Error I, supra.
[4] Vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3137,57 L.Ed.2d 1157. State v. Williams (1986), 23 Ohio St.3d 16, 20,490 N.E.2d 906, 911. *Page 1