[Cite as *State v. Quattara*, 2025-Ohio-2850.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240549 |
|  |  | TRIAL NO. C/24/CRB/2021/A |
| Plaintiff-Appellee, | : |  |
| vs. | : |  |
| SIE QUATTARA, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : |  |

This cause was heard upon the appeal, the record, and the briefs.

The judgment of the trial court is reversed and appellant discharged for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 8/13/2025 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Quattara*, 2025-Ohio-2850.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240549 |
| | | TRIAL NO. | C/24/CRB/2021/A |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| SIE QUATTARA, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: August 13, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Ronald Springman, Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**Zayas, Presiding Judge.**

{¶1} Sie Quattara appeals his conviction for patient endangerment. In two assignments of error, Quattara argues that the State failed to present sufficient evidence to establish jurisdiction in Hamilton County and his conviction was against the manifest weight of the evidence. For the following reasons, we reverse the judgment of the trial court.

## Factual Background

{¶2} Sie Quattara, a developmental-disabilities caretaker, was charged with patient endangerment under R.C. 2903.341 for allegedly leaving N.T., a person with a developmental disability, unsupervised while going to break up a disagreement at a soccer game. Quattara proceeded to a bench trial where he was found guilty of patient endangerment and acquitted of a second charge for failure to provide for a functionally-impaired person.

{¶3} At the trial, the operator of a disability consultant company testified that she was contracted to help with compliance, staffing, and client recruitment by the owner of Achu Assure Living Support, LLC, ("Achu"). The consultant was hired to handle behavioral clients for Achu. When the consultant experienced staffing shortfalls, Achu would send her care providers whom she trained and placed in a client's home.

{¶4} N.T., the victim in this case, became a client of Achu in February or March due to his high risk for violence. The consultant testified that N.T. required 24/7 supervision with one staff member at all times because of his violent tendency to attack people. When N.T. became a client, he wore an ankle monitor and had been diagnosed with bipolar disorder and schizophrenia. The consultant had trained Sie Quattara to care for N.T. Quattara had provided care for N.T. for a while and knew

3

that N.T. needed 24-hour supervision. Quattara was direct support personnel, which meant he was the caretaker or aide for N.T. Part of the training entailed recognizing when N.T. was becoming aggressive and how to self-protect in case of violence. Achu's office and N.T.'s home were located in Hamilton County. On June 17, 2023, the consultant received a call on her cell phone from N.T. who had been taken to a hospital that day for a panic attack but was not admitted.

{¶5} A Springfield Township officer, who was assigned to investigate the case, testified that his initial suspect was S.K. The officer had spoken with the consultant and N.T. about an incident where N.T. went to the hospital. N.T. was under the impression that he was going to an FC Cincinnati ("FC") soccer game and was left at the game by S.K. N.T. stated that he was at a soccer game and had a panic attack, so he called the consultant. During the call, the consultant spoke with a female who was with N.T., but not part of N.T.'s care team. The consultant asked N.T. where S.K. was, and N.T. responded that S.K. was not with him at that time.

{¶6} The officer believed there was enough evidence for charges, so he filed charges against S.K. After S.K. was arrested, the officer received a call from the consultant who told him that S.K. was not the individual providing care to N.T. that day. The consultant provided the investigator with a cell phone number of the person providing care that day. The officer ran the number through the regional crime information center, and learned that the number belonged to Quattara. When the officer spoke with Quattara, Quattara informed him that he provided care to N.T. on that day. Quattara explained that he spoke with S.K. because he needed extra money and could not get a job due to his status as an international student. S.K. accompanied Quattara to Achu, and S.K. applied for the position, and Quattara showed up to work.

{¶7} Quattara was with his girlfriend and N.T. at a soccer game, but Quattara

4

was not playing soccer. The officer testified that Quattara had a confrontation with an individual at the soccer game and had walked to the other side of the stadium bleachers to assist in the altercation. Quattara left N.T. with his girlfriend. The officer testified that, "This was at a soccer stadium, it was not FC. It was not an FC game." Quattara did not identify where the game was played. The officer further testified that Quattara knew that N.T. required 24-hour supervision. On cross-examination, the officer confirmed that he did not know where the soccer game was played.

**{¶8}** The lead investigator for the Hamilton County Developmental Disability Service Major and Neutral Incident Unit was responsible for investigating incidents that adversely affected individuals with developmental disabilities. The investigator knew N.T. because she was on the multi-systems team, which is the team that serves individuals, including N.T., who are at high risk for being involved in the court system due to sexual offending and things of that sort. The investigator had received a report from the consultant with concerns regarding alleged neglect. The investigator reviewed N.T.'s care plan and confirmed that N.T. required constant visual supervision due to his risk level.

**{¶9}** The State rested, and Quattara moved for an acquittal under Crim.R. 29, arguing that the State failed to establish venue. The court found that the soccer game may have occurred outside of Hamilton County, but the contract for care was in the home located in Hamilton County. Quattara further argued that the State failed to prove that Quattara disregarded a substantial risk to N.T.'s health. Under R.C. 2901.01(A)(3), physical harm is defined as "[a]ny injury, illness, or psychological impairment regardless of its gravity or duration." The State argued that a panic attack qualified as a physical harm. The court overruled the motion for acquittal, and Quattara rested. The court found him guilty of patient endangerment.

**Venue**

**{¶10}** In his first assignment of error, Quattara contends that the State failed to present sufficient evidence that any element of the offense occurred in Hamilton County.

**{¶11}** Article I, Section 10 of the Ohio Constitution and R.C. 2901.12 require that "evidence of proper venue must be presented in order to sustain a conviction for an offense." *State v. Hampton*, 2012-Ohio-5688, ¶ 20. "It is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." *Id.* at ¶ 19, quoting *State v. Dickerson*, 77 Ohio St. 34 (1907), paragraph one of the syllabus. Venue can be established "by the evidence as a whole or by circumstantial evidence." *State v. Hinkston*, 2015-Ohio-3851, ¶ 11 (1st Dist.). "A conviction may not be had in a criminal case where the proof fails to show that the crime alleged in the indictment occurred in the county where the indictment was returned." *State v. Nevius*, 147 Ohio St. 263 (1947), paragraph three of the syllabus.

**{¶12}** Quattara was convicted of patient endangerment. Under R.C. 2903.341(B), the State was required to prove the defendant recklessly created a substantial risk to the health or safety of a mentally-retarded person or a developmentally-disabled person. *State v. McMillen*, 2009-Ohio-210, ¶ 58 (5th Dist.). R.C. 2901.12(G) vests venue in the jurisdiction where the defendant's offense, or any element thereof, was committed.

**{¶13}** In this case, the State alleged that Quattara created a substantial risk of harm to N.T. by leaving him unattended at a soccer game. Therefore, the "crime was committed" at the soccer game, and to secure a conviction, the State was required to

prove the offense occurred in Hamilton County. *See Hampton* at ¶ 19-20. Reviewing the record, the State presented no evidence of the location of the soccer stadium where the offense allegedly occurred. The officer testified that the incident occurred at a soccer stadium but not at FC's stadium and not at an FC game. The officer confirmed that he did not know where the soccer game was played because Quattara did not identify where the game was played.

{¶14} The State first argues that Quattara waived this issue in the trial court because after the court found that the State proved venue, defense counsel conceded that venue was met [i]f the offense occurred in N.T.'s home. The State neglects to mention that directly preceding that statement, defense counsel insisted that "venue as to [the] soccer stadium is not met." Acknowledging that if the offense occurred in N.T.'s home, venue was proven, did not waive Quattara's argument that the offense occurred in the stadium, and the State provided no evidence that the stadium was located in Hamilton County.

{¶15} The State also contends that venue was established by the facts and circumstances because the contract to provide service to N.T. was executed in Hamilton County, the contract was to provide services at N.T.'s home in Hamilton County, Quattara was trained in Hamilton County, the officer was a detective in Hamilton County, and the investigator was employed by the Hamilton County Developmental Disability Service Major and Neutral Incident Unit.

{¶16} However, the State was required to prove that Quattara recklessly created a substantial risk to N.T. *See McMillen*, 2009-Ohio-210, at ¶ 58 (5th Dist.). Where the contract was executed was not an element of the offense and therefore not relevant to proving the offense. The offense did not occur in N.T.'s home, so the location of the home was not relevant. Because Quattara's conduct that created a

7

substantial risk occurred at a soccer stadium, the State was required to prove the stadium was in Hamilton County, and the officer testified that he did not know where the stadium was located. Consequently, the State failed to adduce any facts or circumstances that venue was proper in Hamilton County. *See Hampton*, 2012-Ohio-5688, at ¶ 19-20.

{¶17} Accordingly, we sustain the first assignment of error, rendering his second assignment of error moot.

## Conclusion

{¶18} Having sustained Quattara's first assignment of error, we reverse the judgment of the trial court and discharge Quattara from further prosecution for this offense.

Judgment reversed and appellant discharged.

CROUSE and NESTOR, JJ., concur.