[Cite as *State v. Johnson*, 2012-Ohio-3227.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-237 |
| DAVID MONTREL JOHNSON | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County Court of Common Pleas, Case No. 2011-CR-749B

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      July 16, 2012

APPEARANCES:

For Plaintiff-Appellee
JOHN FERRERO
BY: KATHLEEN TATARSKY
Stark County Prosecutor
110 Central Plaza South, Ste. 510
Canton, OH 44702

For Defendant-Appellant

JACOB T. WILL
116 Cleveland Avenue N.W., Ste. 808
Canton, OH 44702

*Gwin, J.*

{¶1} Appellant David Montrel Johnson ("Johnson") appeals from the October 5, 2011 judgment entry of the Stark County Court of Common Pleas convicting him of one count of felonious assault with a repeat violent offender specification ["RVO"] and sentencing him to an aggregate prison term of 14 years. Appellee is the State of Ohio.

*FACTS AND PROCEDURAL HISTORY*

{¶2} On May 20, 2011 Ralph Davison, a 54-year-old welder, went to the Hall of Fame Fuel Mart at 704 Sherrick Road S.E., Canton, to buy some liquor to celebrate a new job. Davison had a white handled knife concealed on his person when he entered the store.

{¶3} Inside the store were Lamars Wynn[1] and Curt Anderson[2]. Johnson remained outside chatting with some girls. All three had been drinking and smoking marijuana.

{¶4} Cameras inside the store captured images of Wynn and Anderson in Davison's face, with Davison bent backward over the counter. Davison pulled a knife, and at some point Anderson was stabbed. Wynn and Anderson punched Davison repeatedly, eventually taking him to the floor. The three were struggling on the floor as Johnson, a friend of Wynn and Anderson entered the store to see what was going on. Johnson entered the melee repeatedly striking Davison as Davison lie on the floor.

{¶5} Wynn, Johnson, and Anderson hit, kicked, and stomped Davison with striking brutality even as customers and employees of the store went about their

[1] Wynn has filed a separate appeal in *State v. Wynn*, 5th Dist No. 2011CA00244.
[2] Anderson has filed a separate appeal in *State v. Anderson*, 5th Dist. No. 2011CA00226.

business. At one point appellant, Johnson, and Anderson left the store, only to return and continue the assault on Davison.

{¶6} A clerk inside the store called the police. Another clerk yelled at the group that the police were on their way. Wynn, Anderson, and Johnson drove off before police arrived.

{¶7} Upon arrival, police found Davison unconscious on the floor in a pool of blood, with his sport coat pulled over his head. Police also discovered a knife lying on the sidewalk outside the store. They later learned this was Davison's knife, which Johnson picked up in the aftermath of the attack, wiped clean, and threw down outside the store.

{¶8} Davison experienced severe head trauma and a stab wound 3 to 5 inches deep over his right hip; he was hospitalized for a month. His injuries required extensive rehabilitation, and he still walked with a cane at the time of trial. His balance and memory are still affected. Davison has no memory of the assault.

{¶9} Investigators reviewed the video surveillance in the store the night of the assault. Two store clerks recognized the three assailants as regular customers in the store, although only one was identified by name, "Country." Canton police knew "Country" as Wynn. Wynn, Anderson, and Johnson were identified in photo line-ups within days of the assault.

{¶10} All three assailants were charged by indictment with felonious assault pursuant to R.C. 2903.11(A)(1) and/or (A)(2), a felony of the second degree. All three indictments included repeat violent offender (RVO) specifications pursuant to R.C. 2941.149.

{¶11} Prior to trial, Johnson moved to bifurcate the felonious assault count from the RVO specification.

{¶12} Johnson was found guilty as charged, as were Wynn and Anderson. Following the verdict, the trial court held a hearing on the RVO specifications. The trial court found the specifications applied to all three co-defendants. The trial court sentenced Johnson to eight years in prison on the charge of felonious assault and an additional six years on the RVO specification for a total consecutive term of fourteen years.

*ASSIGNMENTS OF ERROR*

{¶13} Johnson raises four assignments of error,

{¶14} "I. THE APPELLANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT FAILED TO DISCHARGE THE ORIGINAL JURY POOL AFTER A JUROR DELIBERATELY DISOBEYED AN ADMONITION BY THE COURT.

{¶15} "II. THE APPELLANT'S REPEAT VIOLENT OFFENDER SPECIFICATION WAS IMPROPERLY CHARGED, AS APPELLANT WAS NEVER GIVEN NOTICE OF THE POTENTIAL FOR A SPECIFICATION BASED ON SUBSEQUENT VIOLENT CONDUCT.

{¶16} "III. THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶17} "IV. THE APPELLANT'S CONVICTION FOR ONE COUNT OF FELONIOUS ASSAULT IN VIOLATION OF R.C. 2903.11 WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I.

{¶18} During the voir dire phase of Johnson's trial, a break was taken prior to the impaneling of the jury. Before the break, the trial court gave the appropriate admonitions to the jury, and specifically stated, "Do not form or express any opinion on the case," as well as "Do not discuss the case among yourselves or with anyone else." However, after a brief recess, the trial court had a dialogue with Juror 116. During this dialogue, it came to the court's attention that Juror 116 yelled out the word "Guilty!" in the jury assembly room. The remaining potential jurors were immediately questioned about whether the comment of Juror 116 influenced any of their opinions. No potential juror responded that it had and the voir dire of the jury proceeded with questioning by Wynn's counsel and Johnson's counsel. No mistrial was requested.

{¶19} In his first assignment of error, Johnson argues that his rights to a fair and impartial trial were impaired. Furthermore, he contends, even though the panel stated that they would not be biased by the decision, he claims that his guilty verdict was the result of the improper statement made by Juror 116. Based on the foregoing, Johnson argues, the trial court should have declared a mistrial, and brought in a new prospective jury pool.

{¶20} The granting of a mistrial rests within the sound discretion of the trial court as it is in the best position to determine whether the situation at hand warrants such action. *State v. Glover*, 35 Ohio St.3d 18, 517 N.E.2d 900(1988); *State v. Jones* (1996) 115 Ohio App.3d 204, 207, 684 N.E.2d 1304, 1306(1996).

{¶21} "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550

N.E.2d 490, 497(1988). The granting of a mistrial is necessary only when a fair trial is no longer possible. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9(1991); *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749, 771(2001). When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of discretion. *State v. Draughn*, 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793-794(1992), citing *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768(1984), *certiorari denied*, 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728(1985); *State v. Gardner*, 127 Ohio App.3d 538, 540-541, 713 N.E.2d 473, 475(1998).

{¶22} Johnson did not object or move for a mistrial. Accordingly, any error in this case is subjected to a plain error review. Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶23} "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. __, 130 S.Ct. 2159, 2010 WL 2025203 (May 24, 2010). (Internal quotation marks and citations omitted). *Accord, State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶28.

**{¶24}** The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a defendant accused of a state criminal violation shall be tried before a panel of fair and impartial jurors. See *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491(1968), and *State v. King*, 10 Ohio App.3d 161, 460 N.E.2d 1383(1983). See, also, Ohio Constitution, Article I, Section 10.

**{¶25}** The conclusions reached in a case should be generated only by evidence and argument in open court, and not by any outside influence. *Patterson v. Colorado*, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879(1907). The jury is obligated to decide a case solely on the evidence, and any communication or contact outside the courtroom or jury room about the matter at trial between a juror and another person, and any independent inquiry or experiment by a juror concerning the evidence or the law, constitutes juror misconduct. *State v. Taylor*, 73 Ohio App.3d 827, 831, 598 N.E.2d 818(1991). Further, when a juror refuses to consider the evidence or forms an opinion as to guilt or innocence before all the evidence is presented, such activity constitutes misconduct. *Id.* See also, *Carr v. State*, 22 Ohio App. 78, 153 N.E. 233(1926); *Busick v. State*, 19 Ohio 198, 1850 WL 78(1850); and *State v. Carter*, 11 Ohio Dec.Rep. 123, 1890 WL 419(C.P. 1890); *State v. McMillen*, Stark App. No. 2008-CA-0122, 2009-Ohio-210, ¶ 122. However, the United States Supreme Court has recognized:

[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable.... [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide

the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

**{¶26}** *Smith v. Phillips*, 455 U.S. 209, 217 102 S.Ct. 940, 946 (1982); *United States v. Olano*, 507 U.S. 725, 738, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508 (1993).

**{¶27}** In *State v. Hessler*, 90 Ohio St.3d 108, 115-116, 734 N.E.2d 1237, 1247 (2000) the Ohio Supreme Court set forth our standard of review when juror misconduct is alleged:

As a reviewing court, we show deference to the trial judge, who sees and hears the events and thus is in a better position to accurately evaluate the situation and determine the appropriate scope of inquiry. *State v. Huertas* (1990), 51 Ohio St.3d 22, 29, 553 N.E.2d 1058, 1067; *United States v. Ramos* (C.A.5, 1995), 71 F.3d 1150, 1153-1154. Therefore, we employ an abuse-of-discretion standard and will not reverse the trial court unless it has handled the alleged juror misconduct or ruled upon the post-trial motion in an 'unreasonable, arbitrary, or unconscionable manner'. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149."

*State v. Hessler,* 90 Ohio St.3d at 115-116, 734 N.E.2d 1237; *State v. McMillen*, supra, ¶ 124-125. We now consider the relevant facts in the case at bar.

**{¶28}** After Juror 116 was dismissed, the trial court told the jurors about the juror's removal. The trial court further inquired of the jury pool to determine whether Juror 116's remark had influenced any other juror,

[COURT] Ladies and Gentlemen, it's been brought to the Court's and counsel's attention that Juror 116 proceeded to blurt out the word, guilty in the Jury Assembly Room and perhaps in the presence of some of you.

I want to remind you all that in the United States system of justice there is a presumption of innocence, and a person accused of a crime is presumed innocent until proven guilty beyond a reasonable doubt, and the burden is on the prosecution to prove each and every element of the offense beyond a reasonable doubt, and at this point in time that presumption of innocence exists.

I need to know if any of you have formulated an opinion as you sit here today regarding the guilt or innocence of these Defendants, anybody?

I also need to know if Juror 116's comment has in any way influenced you or colored your opinion about these proceedings and the integrity of this trial, anybody? Hearing no response, I am going to conclude that all of you understand that these individuals are innocent until proven guilty, and that Juror 116's behavior and comment has not influenced you in any way, shape or form with respect to these proceedings; may be as to your opinion of him but not to these proceedings.

Okay, thank you.

1T. at 132-133.

**{¶29}** Under the circumstances, we must defer to the trier of fact who had the opportunity to hear the potential jurors and observe their demeanor. See *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304(1988); *State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523(1988); *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356(1982). We are not inclined to substitute our judgment for the trial court's judgment concerning the credibility of the jurors. *State v. Taylor,* supra 73 Ohio App.3d at 833, 598 N.E.2d at 822. Looking at the above incident, we cannot find the trial court abused its discretion. As required, the court conducted a hearing to inquire into whether there had been any effect upon the remaining potential jurors because of the misconduct on the part of the Juror 116. The court determined that the incident had no effect upon the remaining potential jurors. Upon review, the court's actions clearly satisfied its duty to inquire and its decision was not unreasonable, arbitrary, or unconscionable.

**{¶30}** Accordingly, we find no plain error affecting Johnson's substantial rights.

**{¶31}** Johnson's first assignment of error is overruled.

II.

**{¶32}** In his second assignment of error, Johnson contends that the RVO specification is unconstitutional for lack of proper notice. Specifically, Johnson does not dispute that he has a prior conviction for aggravated robbery, an offense of violence. However, Johnson contends that he should have been given notice at the time he was convicted of that prior offense that if he was ever convicted of another offense of violence, he could be subject to the penalties set forth for repeat violent offenders. Johnson argues he was not advised of this fact when he previously pled guilty to

aggravated robbery. As a result, Johnson contends that the RVO specification is unconstitutional for lack of proper notice.

**{¶33}** Due process "expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty." *Lassiter v. Dept. of Soc. Servs. Of Durham Cty., N. Carolina*, 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640, rehearing denied, 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981). We find the requirements of due process and equal protection do not extend to requiring trial courts to warn criminal defendants of every possible eventuality of their convictions, especially those easily foreseeable. In other words, a defendant convicted of a felony offense of violence may reasonably be expected to anticipate the conviction will have consequences for future criminal behavior.

**{¶34}** Ohio's RVO specification has passed constitutional muster in other respects. The Ohio Supreme Court has held the RVO specification does not violate the Sixth Amendment right to trial by jury. *State v. Hunter*, 123 Ohio St.3d 164, 2009-Ohio-4147, 915 N.E.2d 292, cert. denied, 130 S.Ct. 1888, 176 L.Ed.2d 372 (2010).

**{¶35}** Johnson does not allege his prior conviction was obtained in violation of his Sixth Amendment right to counsel. The Ohio Supreme Court has held that an uncounseled conviction, obtained without a valid waiver of the Sixth Amendment right to counsel, is constitutionally infirm if the result was a sentence of incarceration. *State v. Brooke*, 113 Ohio St.3d 99, 2007-Ohio-1533, 863 N.E.2d 1024, at ¶9, citing *State v. Brandon*, 45 Ohio St.3d 85, 86, 543 N.E.2d 501 (1989); *Nichols v. United States*, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). "An uncounseled conviction cannot

be used to enhance the penalty for a later conviction if the earlier conviction resulted in a sentence of confinement." *Brooke*, 113 Ohio St.3d 199, at ¶ 12.

**{¶36}** When a defendant does question the use of a prior uncounseled conviction in an earlier case, the burden is on the defendant to make a prima-facie showing of constitutional infirmity, which the state may rebut by establishing defendant's right to counsel was validly waived. *Brooke*, supra, 113 Ohio St.3d 199, at ¶ 11.

**{¶37}** In the instant case, Johnson asks us to extend these protections to an unwarranted degree. Johnson has not presented any authority for his underlying assertion that a prior, counseled conviction may not be used to enhance the penalty of a later criminal offense, and we find no constitutional infirmity.

**{¶38}** The United States Supreme Court has noted:

As a general proposition, a sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct.589, 30 L.Ed.2d 592 (1972). "Traditionally, sentencing judges have considered a wide variety of factors in addition to evidence bearing on guilt in determining what sentence to impose on a convicted defendant." *Wisconsin v. Mitchell*, 508 U.S. 476, 485, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993). One such important factor, as recognized by state recidivism statutes and the criminal history component of the [federal] Sentencing Guidelines, is a defendant's prior convictions. Sentencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a

defendant's past criminal behavior, even if no conviction resulted from that behavior. We have upheld the constitutionality of considering such previous conduct in *Williams v. New York*, 337 U.S. 241, 69 S.Ct.1079, 93 L.Ed. 1337 (1949). * * *.

*Nichols v. U.S.*, 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994).

**{¶39}** The *Nichols* Court further declines to accept the defendant's assertion, similar to appellant's argument here, that due process requires any kind of "warning" to defendants entering a no-contest plea or upon conviction that the conviction might later be used for enhancement purposes upon commission of a future crime. *Id.*

**{¶40}** Our colleagues on the Fourth District Court of Appeals rejected an argument similar to Johnson's most succinctly, and we adopt their rationale:

There appears to be no duty in Ohio to inform a defendant pleading guilty of the possible enhancement of sentences resulting from future crimes, nor can this court see why there should be such a duty. A trial court judge should not be required to anticipate recidivist behavior by a defendant who enters a guilty plea in that court. To be sure, a defendant is entitled to be advised of the effect of his guilty plea so that it can be shown that the plea was knowingly and voluntarily made. But it begs the question to argue that a defendant who pleads guilty would not be aware that if he gets convicted of the same offense again it is going to go harder on him the second time around.

*State v. Southers*, 4th Dist. No. 88CA10, 1988 WL 125024(Nov. 23, 1988). *Accord, State v. Lewis,* 11th Dist. No. 2009-L-138, 2010-Ohio-4288, ¶42.

**{¶41}** Accordingly, Johnson's second assignment of error is overruled.

III.

**{¶42}** Johnson's third assignment of error is that he was denied the effective assistance of counsel because trial counsel failed to ask to sever Johnson's trial from the trial of his two co-defendants.

**{¶43}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶44}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet *both* the deficient performance and prejudice prongs of *Strickland* and *Bradley*. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

**{¶45}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland* 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{¶46}** In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{¶47}** An appellant must further demonstrate that he suffered prejudice from his counsel's performance. See *Strickland,* 466 U. S. at 691 ("An error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

**{¶48}** Defendants may be charged in the same indictment, pursuant to Ohio Crim. R. 8(B) as follows:

> Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.

**{¶49}** The law favors the joinder of defendants and the avoidance of multiple trials because joinder conserves judicial and prosecutorial time, lessens the expenses of multiple trials, diminishes the inconvenience to witnesses, and minimizes the possibility of incongruous results from successive trials before different juries. *State v. Thomas*, 61 Ohio St.2d 223, 400 N.E.2d 401(1980).

**{¶50}** Whether an accused shall be tried separately from a co-defendant is a matter within the sound discretion of the trial court. *State v. Abbott*, 152 Ohio St. 228, 89 N.E.2d 147(1949). In order to obtain a severance, a defendant needed to affirmatively demonstrate prejudice by the joinder. Crim.R. 14. Crim R. 14 provides, in pertinent part:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, information or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.

**{¶51}** The United States Supreme Court has stated, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317(1993). Even where the risk of prejudice is high, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* Indeed, "[a] request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants." *United States v. Causey*, 834 F.2d 1277, 1287(6th Cir 1987). Thus, to prevail on his severance argument, an appellant must show "compelling, specific, and actual prejudice

from [the] court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678(6th Cir 2005); *United States v. Driver*, 535 F.3d 424, 427(6th Cir 2008).

{¶52} A defendant is not entitled to severance based upon mutually antagonistic defenses unless "there is a serious risk that a joint trial could compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 937, 122 L.Ed.2d 317(1993). The violation of one of his substantive rights by reason of the joint trial include: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure to properly instruct the jury on the admissibility of evidence as to each defendant. See *United States v. Camacho,* 528 F.2d 464, 470(9th Cir 1976), *cert. denied*, 429 U.S. 995, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976); *United States v. Fernandez,* 388 F.3d 1199, 1241(9th Cir 2004).

{¶53} Further, the defendant must establish that he or a co-defendant intends to rely upon a mutually antagonistic defense that is prejudicial to the substantive rights of either defendant. "A defendant reaches a level of antagonism (with respect to the defense of a co-defendant) that compels severance of that defendant, if the jury, in order to believe the core of testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant. In such a situation, the co-defendants do indeed become the government's best witnesses against each other. Where two defendants present defenses that are antagonistic at their core, a substantial possibility exists that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *United States v. Berkowitz*, 662 F.2d

1127, 1133(5th Cir 1981). (Internal quotation marks omitted). (Citations Omitted). Accord, *State v. Walters,* 10th Dist. No. 06AP-693, 2007-Ohio-5554, at ¶ 23; *State v. Evans,* 4th Dist. No. 08CA3268, 2010-Ohio-2554 at ¶ 43.

**{¶54}** "Notwithstanding such assertions, the courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses. See, e.g., *United States v. Tootick,* 952 F.2d 1078 (C.A.9 1991); *United States v. Rucker,* 915 F.2d 1511, 1512-1513 (C.A.11 1990); *United States v. Romanello,* 726 F.2d 173 (C.A.5 1984). The low rate of reversal may reflect the inability of defendants to prove a risk of prejudice in most cases." *Zafiro,* 506 U.S. at 538, 113 S.Ct. 933, 937, 122 L.Ed.2d 317.

**{¶55}** The phrase "prejudicial to the rights of the accused" means something more than that a joint trial will probably be less advantageous to the accused than separate trials. Such a party must show more than that a separate trial would have given him a better chance for acquittal. *United States v. Gallo,* 763 F.2d 1504, 1526 (6th Cir 1985).

**{¶56}** In the case at bar, the evidence was uncomplicated and distinct and the witnesses testifying were the same as to each defendant. Further, surveillance video footage was utilized by the state to show the jury the actions of both the defendants and the victim. Moreover, Johnson's ability to defend himself was not compromised, as his primary strategy for defending himself was to attack the credibility of the state's witness and to rely upon his defense of another affirmative defense. Neither of the two co-defendants made incriminating statements or testified at trial. The trial court instructed

the jury regarding the sorting of evidence and the separate consideration of each of the defendants.

> "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052 (counsel is 'strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See *Bell, supra*, at 702, 122 S.Ct. 1843; *Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland*, *supra*, at 689, 104 S.Ct. 2052; *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)".

*Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 6(2003).

**{¶57}** The Ohio Supreme Court has stated, "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." *State v. Myers*, 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217(2002).

**{¶58}** It is apparent that Johnson's lawyer chose not to sever his case from that of the co-defendants as part of his trial strategy. Counsel may have maintained a hope that the presence of Anderson and Wynn would divert some of the blame from Johnson. A defense attorney is "not under a duty to sever defendants where it was not evident that appellant would be prejudiced by a joint trial under Crim.R. 14." *State v. Thompson*,

8th Dist. No. 67048, 1995 WL 248522(April 27, 1995). Where a lawyer has not violated an essential duty, ineffective assistance cannot be established. *Id.*

**{¶59}** Even if counsel violated an essential duty by failing to request separate trials, Johnson has not shown that he was prejudiced by such failure. Johnson has not shown there was a reasonable probability he would not have been convicted had the severance been granted. Even if separate trials were granted, the jury would still hear the evidence concerning Wynn and Anderson's actions and view the video surveillance footage.

**{¶60}** Johnson makes only a generalized argument with no factually specific and compelling prejudice argued or demonstrated by the record to support his claim that severance would have led to a different outcome in his case.

**{¶61}** Johnson's third assignment of error is overruled.

IV.

**{¶62}** Johnson's fourth assignment of error raise issues involving the sufficiency and manifest weight of the evidence presented below.

**{¶63}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.;* see also *McDaniel v. Brown*, _U.S._, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d

1239, 2010–Ohio–1017, ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶64}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis sic.) *Id.* at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary (6th Ed. 1990)* at 1594.

**{¶65}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra,* 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983).

Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶66}** In the case at bar, Johnson was convicted of felonious assault. R.C. 2903.11 provides in relevant part,

> (A) No person shall knowingly do either of the following:
>
> (1) Cause serious physical harm to another or to another's unborn;
>
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
>
> * * *

**{¶67}** R.C. 2901.22 defines "knowingly" as follows:

> (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably

be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

**{¶68}** Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff,* 145 Ohio App.3d 555, 563, 763 N.E.2d 695(2001). (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel,* 2nd Dist. No. 6221, 1998 WL 214604, *citing State v. Elliott,* 104 Ohio App.3d 812, 663 N.E.2d 412 (1995).

**{¶69}** Johnson does not dispute that Davison suffered serious physical harm. However, he does contend that the state was unable to prove that Johnson caused serious physical harm to the victim, Ralph Davison. Johnson contends that the state presented evidence that there were two separate events where Davison was struck. However, there was no evidence presented as to when the blows that caused serious physical harm were struck. Johnson argues that he was merely attempting to disarm Davison and further that he tried to stop the further beating of Davison.

**{¶70}** In the case at bar, relevant to this assignment of error, the defendants were charged with aiding and abetting each other in the commission of the felonious assault. Generally, a criminal defendant has aided or abetted an offense if he has supported, assisted, encouraged, cooperated with, advised, or incited another person to commit the offense. See, *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *State v. Mendoza*, 137 Ohio

App.3d 336, 342, 738 N.E.2d 822 (2000), quoting *State v. Stepp*, 117 Ohio App.3d 561, 568-569, 690 N.E.2d 1342 (1997).

{¶71} In addition, in the case at bar the jury was instructed on the affirmative defense of defense of another. In addition, the jury was able to review surveillance video footage from several different cameras that captured the events as they unfolded. That footage shows Johnson was a willing participant in the brutal beating of Davidson and assisted his co-defendants to escape in an attempt to avoid apprehension. Johnson further warned the store clerk against calling the police.

{¶72} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Johnson had committed the crime of felonious assault. We hold, therefore, that the state met its burden of production regarding each element of the crimes and, accordingly, there was sufficient evidence to support Johnson's conviction.

{¶73} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, quoting *State v. Woullard,* 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125.

**{¶74}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.

**{¶75}** "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the [judge] need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003- Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶76}** In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶77}** Although Johnson cross-examined the witnesses and argued that he was trying to defend his friends and take the knife away from Davison the weight to be given

to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180(1990).

**{¶78}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The jury heard the witnesses, evaluated the evidence, and was convinced of Johnson's guilt.

**{¶79}** The jury neither lost their way nor created a miscarriage of justice in convicting Johnson of the charges.

**{¶80}** Johnson's fourth assignment of error is overruled.

*Conclusion*

**{¶81}** Johnson's first, second, third and fourth assignments of error are overruled in their entirety, and the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.

By Gwin, J.,

Delaney, P.J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
WSG:clw 0618                                    HON. JULIE A. EDWARDS

[Cite as *State v. Johnson*, 2012-Ohio-3227.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

|   |   |   |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| DAVID MONTREL JOHNSON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011-CA-237 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.  Costs to appellant.

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. JULIE A. EDWARDS